UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ROBIN OLEBARA,                             )
                                           )
                        Plaintiff          )
                                           )
            v.                             )        C.A. No. 07-1487 (JR)
                                           )
HENRY PAULSON,                             )
Secretary of the Treasury,                 )
                                           )
                        Defendant.         )
_____)

## DEFENDANT'S OPPOSITION TO "PLAINTIFF'S PETITION TO CHIEF JUDGE HOGAN FOR COURT-APPOINTED COUNSEL, AND 2<u>ND</u> MOTION TO RECUSE JUDGE JAMES ROBERTSON"

COMES NOW the Defendant, through undersigned counsel, and hereby opposes "Plaintiff's Petition to Chief Judge Hogan for Court-Appointed Counsel, and 2nd Motion to Recuse Judge James Robertson." The Plaintiff's document has a two-fold purpose. First, Plaintiff again seeks appointment of private civil counsel by the Court. Second, Plaintiff again seeks the recusal of the presiding judge from hearing the case. Neither request is meritorious, and for the reasons set forth below, they should be denied.

### I.    Opposition to Fourth Motion for Appointment of Counsel

This is the fourth motion that Plaintiff has filed demanding that this court award her free court-appointed counsel. As in her previous three motions, Plaintiff fails to identify the provision of law under which she claims entitlement to civil counsel. Presumably, Plaintiff brings her motion under Local Civil Rule 83.11 and 28 U.S.C. § 1915(e)(1). As the Court has previously noted for the Plaintiff's benefit, no civil litigant is guaranteed counsel. *Willis v. FBI,* 274 F.3d 531, 532 (D.C. Cir. 2001). If a plaintiff is proceeding *in forma pauperis*, the court is authorized to appoint counsel under 28 U.S.C.

§ 1915(e)(1), but is not obliged to do so unless the plaintiff demonstrates such exceptional circumstances exist that the denial of counsel would result in fundamental unfairness. *See Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986). "Whether exceptional circumstances exist requires an evaluation of the type and complexity of each case, and the abilities of the individual bringing it." *Id*.

As was the case in her last three requests for counsel, Plaintiff has met none of the standards required by Local Civil Rule 83.11(b)(3).

First, her case is not complex. For example, Defendant's Memorandum of Points and Authorities in support of the Motion for Summary Judgment, filed with this Court on March 21, 2008, is only 13 pages long. The arguments contained therein are not complicated, not even for a layman, and indeed are largely identical to the Defendant's positions in the administrative proceedings below, where Plaintiff also represented herself.

Second, as is set forth in Defendant's summary judgment memorandum, there is no substantive merit to Plaintiff's lawsuit. Plaintiff has no witnesses to offer in support of her claims, denies in her interrogatory answers that she suffered any financial damages, and further admits that she has no material documents regarding the 2002 reduction-in-force to present into evidence. An appointed counsel for Plaintiff cannot create evidence or procure witnesses where the Plaintiff has already on record as saying that none exists.

Third, and perhaps most importantly, the Plaintiff has not made any demonstration that she has diligently sought to engage the services of counsel prior to asking the Court to award her one for free. In her previous lawsuits brought against the

Defendant, Plaintiff has been represented each time by counsel.  If her present case had any merit, one of her prior counsel would presumably be willing to represent her again in this action – yet there is no evidence Plaintiff asked them to represent her.  Plaintiff has not presented any evidence that she solicited the assistance of a legal aid agency, a law school practice clinic, or any other source of *pro bono* legal assistance.  Moreover, there are hundreds, if not thousands, of able attorneys of the bar of this Court who regularly represent civil plaintiffs on a contingent fee basis, with no attorney fees payable by the clients unless they prevail on their claims.  The availability of such representation, of course, presupposes that a plaintiff's case has at least the makings of a meritorious claim.  This Plaintiff's case does not.

Finally, given the lack of evidentiary support for Plaintiff's claims, there appears to be no benefit to the Court to be gained by appointment of counsel, and the scarce availability of attorneys on the *pro bono* panel would be better accommodated by assigning them to a case that is not, in many respects, a rehash of a case already dismissed by the Court six years ago.  *See, e.g., Olebara v. Summers*, C.A. 00-2374 (JR) (D.D.C. December 14, 2001), *aff'd. on summary disposition sub nom. Olebara v. O'Neill*, No. 02-5039 (D.C. Cir. 2002).

Plaintiff makes inflammatory allegations against undersigned counsel in her motion related to her very routine deposition taken on February 26, 2008, including the false claim that counsel "whooped [and] hollered" and another that the undersigned "asked the Plaintiff, a series of questions, regarding the "N N[----]r word."  Pl. Mot. at 2.  The entire deposition was taken down via stenography.  The transcript of the proceedings (showing an absence of "whooping and hollering" by the undersigned) is available for the

Court's review upon request.  Because this is a case involving a claim of race discrimination by Plaintiff, it is entirely appropriate – indeed necessary – for Defendant to inquire in deposition about the possible use of racial epithets in the workplace.[1]

        The portion of the undersigned's inquiry on this subject is reproduced for the Court's review as Defendant's Exhibit 1 to this opposition.  Any objective observer can see that this questioning was done in a professional and appropriate manner; indeed, Plaintiff herself offered no complaint until the instant motion.  Plaintiff's claims, then, are nothing more an attempt to obtain appointment of counsel by means of making inflammatory and false charges, bypassing the need to obtain her own counsel, or to comply with any legal standards for appointment of *pro bono* counsel.

## II.    Opposition to Second Motion to Recuse

        Plaintiff makes a second motion for the Court to recuse itself.  This motion is based on no more evidence than the first one that this Court denied half a year ago.  The Court does not have "a relationship with the defendant as a protective relative, associate, or any other means."  Pl. Mot at 3.  Plaintiff has demonstrated absolutely no factual basis to support her claim of bias by the Court against her, and lacking any evidence, recusal under such circumstances is unwarranted.

        A proposed order denying the instant motion is submitted contemporaneously with this Opposition.

Dated: March 21, 2008                    Respectfully submitted,

                                         JOHN E. BOWMAN
                                         Chief Counsel

---

[1]        In deposition, Plaintiff denied ever being subjected to racist, sexist, or ageist epithets in the workplace, further undermining her case of discrimination and reprisal.

DIRK S. ROBERTS
Deputy Chief Counsel

ELIZABETH R. MOORE
Special Counsel


/s/_____
CHRISTOPHER A. STERBENZ
Trial Attorney
Office of Thrift Supervision
1700 G Street, N.W.
Washington, D.C.  20552
Telephone (202) 906-6528
Fax (202) 906-6353
christopher.sterbenz@ots.treas.gov
DC Bar No. 437722

Attorneys for Henry Paulson,
Secretary
United States Department of the
Treasury

## CERTIFICATE OF SERVICE

I CERTIFY that on March 21, 2008, I served a copy of the foregoing, a proposed

order, and one exhibit on the following by certified mail, return receipt requested, on:

Robin Olebara
P.O. Box 2530
Washington, DC  20013-2530


/s/_____
Christopher A. Sterbenz
Trial Attorney
Office of Thrift Supervision
1700 G Street, N.W.
Washington, D.C.  20552
Telephone (202) 906-6528
Fax (202) 906-6353
christopher.sterbenz@ots.treas.gov
DC Bar No. 437722

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
                                 :
ROBIN OLEBARA,                   :
                                 :
              Plaintiff,         :
                                 :
        v.                       :  Civil Action No.
                                 :  07-1487(JR)
HENRY PAULSON, SECRETARY OF      :
THE TREASURY,                    :
                                 :
              Defendant.         :
                                 :
- - - - - - - - - - - - - - - - x

ORIGINAL

                    Washington, D.C.

                    Tuesday, February 26, 2008

Deposition of

            ROBIN OLEBARA

a witness of lawful age, taken on behalf of the Defendant in

the above-entitled action, before Kelly Carnegie, Notary

Public in and for the District of Columbia, in the Office of

Thrift Supervision, Department of the Treasury, 1700 G

Street, N.W., Washington, D.C., commencing at 9:34 a.m.

APPEARANCES:


On Behalf of the Plaintiff:


    ROBIN OLEBARA, PRO SE

    P.O. Box 2530

    Washington, D.C.  20013



On Behalf of the Defendant:


    CHRISTOPHER A. STERBENZ, ESQ.

    ELIZABETH R. MOORE, ESQ.

    Office of Thrift Supervision

    Department of the Treasury

    1700 G Street, N.W.

    Washington, D.C.  20552

Page 65

1    to target you because of what you wrote on this page, so who

2    is that person?

3        A    Earlier you told me if I didn't have a name, you

4    didn't even want me to respond, so I'm not responding.

5        Q    Okay.  So you don't -- you don't have any person

6    that you can identify that decided to target you?

7        A    No response.

8        Q    Was it Ms. Moore?  Did she decide to target you?

9        A    It could have been you.

10        Q    Was it me?

11        A    Could have been.  I have no idea.  It wasn't me.  I

12    didn't do it.

13        MS. MOORE:  Just for the record, I don't have that

14    kind of power.

15        A    It happened, so --

16        BY MR. STERBENZ:

17        Q    You were reduced in force, that's correct. However,

18    can you tell me who in the agency wanted you to be gone

19    because of your race?  Anyone?  Can you tell me anyone who

20    wanted you to be fired because of your race?

21        A    Whoever was -- whoever did the actions, I guess.

22    That's the only thing I can think of.

Page 66

1      Q    Did anybody in the agency ever use the N word to

2   refer to you?

3      A    I don't know.

4      Q    Did you ever hear anyone use a racial epithet

5   directed at you?

6      A    Well, the N word is not the only way that you can

7   be discriminated against, racism.

8      Q    I understand.  Did any of your supervisors ever say

9   that I don't like you because you're black?

10     A    What you told me to say, if I can't give you a

11  name, then you don't want a response.  So I don't know what

12  else, you know, to say in that regard.

13     Q    Any of your -- any of your supervisors ever say we

14  don't like you because you're 48 years old?

15     A    I never heard that age was the issue.  What I had

16  heard was it was because I was black, a dark-complexion black

17  female.

18     Q    But in your complaint you're suing on the basis of

19  age?

20     A    Exactly.

21     Q    Age discrimination.

22     A    Because I --

Page 67

1       Q    So what -- if you were 48 years old, you were

2   probably one of the youngest people in this agency at that

3   time.  You still would be today.  Was there ever a situation

4   where you were -- people talked about you being too old or

5   too young to be employed?

6       A    I do have -- it's part of the related case.  There

7   was a situation where there was an age factor.

8       Q    Okay.  Who?  Who was it?  How was this age factor

9   --

10      A    Do you want me to respond?  Because I'm going to

11  have to tell my story.

12      Q    Yeah.

13      A    Okay.  When I was first hired in March of '88, in

14  '88, months later, the Office of Procurement Management

15  branch was reorganized, and it was made into a division, the

16  Procurement Management Division.  And at that time, the black

17  employees were -- and I worked in this office -- we were

18  placed in a position as a buyer.  And at that time, I was

19  under 40, and --

20      Q    In 1988 you were 34 years old.

21      A    I would contend that I was used as a target for

22  those people -- there were four of us that were affected, and

Page 68

1    I was the only one who was under 40. Everyone else was over

2    40.  So the game plan was they couldn't use race -- excuse

3    me, age -- as a factor because I was a included in that.

4        **Q    That was in 1988.  What about in 2002?  In 2002 did**

5    **anybody ever say anything to you that you were too old to**

6    **work at this agency, and that's why we're getting rid of you?**

7        A    I wasn't told that, but I was 48.

8        **Q    Okay.  Did your boss say that we're getting rid of**

9    **all the old people in the agency?**

10       A    Well, if I'm looking at it, or in reviewing it,

11   understanding that both Miriam Neale and Terri Radcliff were

12   younger than I, and they were doing procurement work and I

13   wasn't allowed to retreat, maybe in fact age was a major --

14   age was a factor because they were both under.

15       **Q    Okay.  Did anyone tell you that, that the reason**

16   **why you're not being allowed to retreat is because of your**

17   **age?**

18       A    I wasn't told that.

19       **Q    No?  Okay.  Did anyone ever tell you --**

20       A    But I still contend that.

21       **Q    Did anyone ever tell you the reason you're not**

22   **being allowed to bump or retreat is because of the complexion**

DEPOSITION OF ROBIN OLEBARA
CONDUCTED ON TUESDAY, FEBRUARY 26, 2008

1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

2        I, Kelly Carnegie, Certified Shorthand

3    Reporter, Registered Professional Reporter, the

4    officer before whom the foregoing proceedings were

5    taken, do hereby certify that the foregoing transcript

6    is a true and correct record of the proceedings; that

7    said proceedings were taken by me stenographically and

8    thereafter reduced to typewriting under my

9    supervision; and that I am neither counsel for,

10   related to, nor employed by any of the parties to this

11   case and have no interest, financial or otherwise, in

12   its outcome.

13        IN WITNESS WHEREOF, I have hereunto set my

14   hand and affixed my notarial seal this 29th day of

15   February, 2008.

16   My commission expires:

17   February 9, 2012

18

19

20   _____

21   NOTARY PUBLIC IN AND FOR THE

22   DISTRICT OF COLUMBIA

DIVERSIFIED REPORTING SERVICES
(202) 467-9200

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ROBIN OLEBARA,               )
                                        )
                Plaintiff      )
                                          )
       v.                   )     C.A. No. 07-1487 (JR)
                                        )
HENRY PAULSON,           )
Secretary of the Treasury,      )
                                        )
                Defendant.    )

## <u>ORDER</u>

UPON CONSIDERATION of the "Plaintiff's Petition to Chief Judge Hogan for Court-Appointed Counsel, and 2nd Motion to Recuse Judge James Robertson," the Defendant's Opposition thereto, and the entire record herein, it is, this _____ day of _____, 2008, hereby ORDERED that the Plaintiff's Motion is DENIED.

      SO ORDERED.

                                          _____
                                        James Robertson
                                        United States District Judge

Copies to:

Robin Olebara                          Christopher A. Sterbenz
Plaintiff                               Trial Attorney
P.O. Box 2530                        Office of Thrift Supervision
Washington, D.C.  20013        1700 G Street, N.W.
                                          Washington, D.C.  20552